**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

ROBERT TREPETA,
*on behalf of himself and all
other similarly situated individuals,*

    Plaintiffs,

v.                                            Case No. 2:19-cv-00405-MSD-LRL

NATIONAL CONSUMER TELECOM
AND UTILITIES EXCHANGE, INC.,
and
EQUIFAX INFORMATION SERVICES, LLC,

    Defendants.

## PLAINTIFF'S FIRST AMENDED CLASS COMPLAINT

COMES NOW the Plaintiff, Robert Trepeta, by Counsel, and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), hereby files this First Amended Complaint against the Defendants National Consumer Telecom and Utilities Exchange, Inc. ("NCTUE") and Equifax Information Services, LLC, based upon the following:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, and attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681a–x (the Fair Credit Reporting Act or "FCRA").

2. Defendants are both CRAs under the FCRA, as they collect, warehouse, parse, and sell consumer reports about consumers to businesses for purposes of making eligibility decisions, such as whether to charge someone a deposit when they open a utility account. *See* 15 U.S.C. § 1681a(d), (f) (defining "consumer report" and "consumer reporting agency").

3. Seeking to enforce that right, Plaintiff requested that Defendant Equifax provide him with the disclosure of his consumer file but, despite that Equifax operates the NCTUE database and that database contained information about Plaintiff, Equifax did not include any NCTUE information in Plaintiff's disclosure.

4. Plaintiff thereafter requested his consumer file directly from NCTUE, which did not respond at all to that request.

5. Discovery will confirm that this is no isolated instance. Defendants do not want consumers to know about NCTUE or the information it sells about them. Having that entity known creates monetary problems for NCTUE and Equifax, as consumers will then seek to enforce their FCRA rights by asking for file disclosures, disputing inaccurate information, and potentially suing NCTUE when it does not investigate or correct inaccuracies. In short, informing consumers about NCTUE and the information that it and Equifax report about them behind the scenes will cost NCTUE and Equifax money, and neither wants that outcome.

6. Plaintiff therefore brings a class claim against Defendants for their failure to inform him and a class like him of the NCTUE information present in his file. Plaintiff plainly asked for his consumer file disclosure, which Congress has concluded is a pertinent and valuable right under the FCRA, yet neither Defendant would not provide Plaintiff with the NCTUE information it possessed about him.

7. Plaintiff therefore suffered an informational injury because he was statutorily entitled to the information Defendants possessed about him as well as the sources of that information, yet Defendants provided neither. He also suffered an actual monetary loss as he was deprived information that has a known value of at least $12.50.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

9. Plaintiff is a natural person residing in Virginia, and at all times relevant hereto was a "consumer" as defined by the FCRA.

10. Defendant NCTUE is a corporation headquartered in Atlanta, Georgia.

11. NCTUE is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12. NCTUE is regularly engaged in assembling, evaluating, and disbursing information concerning consumers in order to furnish consumer reports to third parties as defined by 15 U.S.C. §1681a(d).

13. Defendant Equifax Information Services, LLC is a foreign limited liability company also headquartered in Atlanta, Georgia, and authorized to do business in the Commonwealth of Virginia through its registered agent in Richmond, Virginia.

14. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

15. Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in order to furnish "consumer reports" to third parties as defined by 15 U.S.C. §1681a(d).

## STATEMENT OF FACTS

**CONGRESS ESTABLISHED THE SPECIFIC RIGHTS TO INFORMATION ALLEGED HERE TO PROTECT CONSUMERS FROM ACTUAL HARM**

16. Congress enacted the FCRA in 1970 with the aim not only of empowering consumers with the ability to correct inaccuracies in the then-burgeoning credit-reporting industry, but to foster the transparency in allowing them to police the information in the files consumer reporting agencies ("CRAs") maintain about them. *Covington v. Equifax Info. Servs., Inc.*, No. 18-

15640-KM-MAH, 2019 WL 4254375, at *3 (D.N.J. Sept. 9, 2019) ("Congress enacted the FCRA 'to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'").

17. Congress created the consumer's right to see their full credit file in order to allow him or her to monitor, prevent and if discovered correct inaccurate information in their file.  As this Court has noted:

> The finding of injury in fact in these decisions rest in large part on the consumer's inability to monitor his or her file for falsity when not provided the relevant information. *See, e.g.*, *Patel*, 2016 WL 6143191, at *4 ("[A] consumer cannot monitor [his or] her file for falsity if [he or] she is not given the relevant information. That impediment, that non-disclosure, is thus a real injury. At the very least, preventing a consumer from monitoring [his or] her file presents a 'risk of real harm' of exactly the type that [the] FCRA seeks to prevent (*i.e.*, the dissemination of incorrect information); and this risk can itself 'satisfy the requirement of concreteness.' ").

*Clark v. Trans Union, LLC*, No. 3:15CV391, 2016 WL 7197391, at *10, n.20 (E.D. Va. Dec. 9, 2016). But this conclusion is nothing new—courts have long-recognized that one of the keys to accurate reporting is to permit consumers to know what the CRAs know about them and how the CRAs learned it. *See, e.g.*, *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987) (discussing reasons behind enactment of the FCRA and noting the rights it provides consumers, among them "the reporting agency is required to divulge the information in its files concerning the interested consumer").

18. Equifax itself has repeatedly and publicly advised consumers of the real value and importance in obtaining and reviewing the content of their Equifax file.  It explains, that "[c]hecking your credit reports regularly can help you understand what information potential lenders and creditors see when you apply for credit, as well as ensure all of your information is

complete and accurate." https://www.equifax.com/personal/education/credit-report/credit-reports-checklist/ last visited September 26, 2019.

19. As noted above, the FCRA demands that CRAs provide consumers with everything in their files, including sources of information, when a consumer requests it. 15 U.S.C. § 1681g(a). Such is a substantive right with which Congress provided consumers when it enacted the FCRA.

20. Further, while consumers are entitled to receive one free copy of their complete file disclosure each year (15 U.S.C. §1681j(a)(1)(A)), Congress recognized that this disclosure had a tangible and actual monetary value and provided that consumers must purchase any full file disclosure beyond that annual copy. 15 U.S.C. § 1681j(f)(1). That charge began at a monetary price if $8.00, but is now permitted up to $12.50. *See* 84 F.R. 515.

21. Equifax also recognizes the monetary value of to a consumer of his or her access to Equifax's full file disclosure as it sells multiple products to provide such access at monthly rates starting at $16.95

**PLAINTIFF TREPETA REQUESTS A COPY OF HIS EQUIFAX FILE DISCLOSURE**

22. In Spring 2018, Plaintiff requested his file disclosure from Equifax, and later from NCTUE, as he was close to retirement from the Navy. As part of the Navy's preparation of Plaintiff and others like him for private life, the Navy provided training that included advice on such topics such as the importance of keeping abreast of the information that was being reported about him.

23. The training repeatedly stressed the necessity of monitoring credit reports and scores, advice that was particularly pertinent to Plaintiff, as he has received letters confirming that he was affected by the 2015 data breach of the Government's Office of Personnel Management.

24. Having spent most of his adult life in the military, Plaintiff was new to the notion of keeping up with his credit. His involvement with the OPM's data breach, and the heightened

risk of identity theft that accompanied it, caused Plaintiff stress and required him to spend numerous hours learning of the credit reporting system and its many components.

25. That stress, accompanied by the Navy's instructions to keep abreast of his credit reports and credit scores, caused Plaintiff to request his disclosures from Defendants.

26. Plaintiff was also concerned about the possibility that one of his former spouses had defaulted on some utility debt and that default would be tied to him because of their marriage. He therefore specifically sought NCTUE information, having learned of its existence and purpose through research brought on by the Navy's advice that he closely monitor the information being reported about him.

27. On or around May 12, 2018, in response to Plaintiff Trepeta's request, Equifax provided and furnished to Mr. Trepeta his conventional credit report.

28. A credit report is not the same thing as the file disclosure Plaintiff requested. The file disclosure is required to contain much more information including, as set forth above, the entirety of the data that the consumer reporting agency maintains about the consumer, as well as the sources of the information in the consumer's file.

29. Although Equifax manages and operates the NCTUE database, Plaintiff's Equifax consumer disclosure did not list NCTUE nor contain any account information maintained in the NCTUE database or the source thereof.

30. Equifax deprived Plaintiff Trepeta of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

31. In June 2018, Plaintiff Trepeta requested a full copy of his file from Defendant NCTUE.

32. Defendant NCTUE received this request in June 2018.

33. Plaintiff was only able to review his NCTUE data after he filed his previous federal lawsuit and it was provided to him in conjunction with NCTUE's initial disclosures, before such time as the parties mutually agreed to dismiss the case without prejudice.

34. NCTUE deprived Plaintiff Trepeta of this valuable information, to which he is statutorily entitled, despite the requirements of the FCRA and according to its standard practice and procedure.

35. Plaintiff suffered emotional distress from Defendants' failure to provide him with the NCTUE information it possessed, as that deprivation prevented him from adequately assessing the accuracy of any information NCTUE possessed and reported about him. He also suffered stress and frustration from the inability to learn the information and to whom Equifax and NCTUE reported it.

**DEFENDANTS' FAILURE TO DISCLOSE
UTILITY RECORDS AND THEIR TRUE SOURCE**

36. Defendant Equifax maintains information about consumers' account histories for their phone service, cable TV bills, internet service, water service, electricity provider and other various forms of consumer "utility" billing information, sourced from the NCTUE database, which is under the complete control of Defendant Equifax.

37. Upon information and belief, Equifax attempts to segregate the NCTUE information away from its traditional credit reporting database so that it can argue that it does not need to disclose this information to consumers because it is not in their "file."

38. However, Congress had already contemplated this gamesmanship as far back as 2003, when as part of the Fair and Accurate Credit Transactions Act of 2003 (FACTA), Congress made it illegal to attempt to evade treatment as a consumer reporting agency by means of corporate

reorganization or restructuring, or by manipulating the way in which data is physically stored. 15 U.S.C. § 1681x; 12 C.F.R § 1022.140.

39.   Defendant Equifax never includes the consumer utility payment history in its possession when a consumer writes to ask for a copy of their file.

40.   Defendant NCTUE similarly fails to comply with the requirements of 15 U.S.C. § 1681g.

41.   The Defendants are aware of their obligations under the Fair Credit Reporting Act.

42.   The Defendants knew about their legal obligation to provide all information in a consumer's file upon the consumer's request under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

43.   Despite knowing these legal obligations, the Defendants acted consciously in breaching their known duties and deprived the Plaintiff and other members of the class of the information that each was entitled to under the FCRA.

44.   The Defendants' conduct was not a mere mistake or accident. Instead, it was the intended result of their standard operating procedures.

45.   Upon information and belief, the Defendants have not and do not intent to modify their procedures to comply with the FCRA, because compliance would drastically increase their operating expenses and compliance costs.

46.   Additionally, the Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA, including through the Consumer Data Industry Association, as well as their legal counsel. Accordingly, the Defendants' violations of 1681(g)

were willful and they are therefore liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## CLASS ACTION ALLEGATIONS

47. The Plaintiff restates each of the allegations in paragraphs 1 through 45 as if set forth at length herein.

48. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiff brings this action for himself and on behalf of a class defined as follows (the "Equifax Class"):

> All natural persons residing in the Fourth Circuit (a) who requested their consumer file from Equifax, (b) within the two years preceding the filing of this action and during its pendency, and (c) to whom Equifax provided a response that did not include any reference to the utility records information maintained by Equifax or its source within the consumer's file disclosure. Excluded from the class definition are any employees, officers, or directors of Equifax, any attorney appearing in this case, and any judge assigned to hear this action.

49. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiff brings this action for himself and on behalf of a class defined as follows (the "NCTUE Class"):

> All natural persons residing in the Fourth Circuit (a) who requested their consumer file from NCTUE, (b) within the two years preceding the filing of this action and during its pendency, and (c) to whom NCTUE did not provide a response that included the utility records information maintained by NCTUE and/or Equifax. Excluded from the class definition are any employees, officers, or directors of NCTUE and/or Equifax, any attorney appearing in this case, and any judge assigned to hear this action.

50. The Plaintiff incorporates his prior allegations and estimates that each class is so numerous that joinder of all members is impractical. Although the precise number of class members is known only to the Defendant, Defendants send out hundreds of thousands of consumer file disclosures per year, and Defendants' uniform practice and procedure is to always omit the NCTUE utility records information, and its source, from such disclosures. Accordingly, Plaintiff estimates that the class size for the Fourth Circuit alone numbers in the tens of thousands.

51. The Plaintiff's claim is typical of those of the class members. All are based on the same facts and legal theories. Equifax's response to a consumer's request for a full copy of his or her consumer file routinely fails to include any information about the nature of the utility account information stored in Equifax's systems or its source. And NCTUE systemically refused to provide the consumer file disclosure required by the FCRA.

52. The Plaintiff will fairly and adequately protect the interests of the class. The Plaintiff has retained counsel experienced in handling FCRA class actions. Neither the Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

53. Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions would create a risk of adjudications that would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair their ability to protect their interests.

54. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendants have acted on grounds generally applicable to the class, thereby making appropriate declaratory relief with respect to the class as a whole.

55. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined

and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

  b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring such claims individually. Further, most consumers affected by the Defendants' FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. A win for one consumer would set the law for every similarly situated consumer.

<u><strong>COUNT I: 15 U.S.C. § 1681g(a)</strong></u><br><strong>Equifax (Class Claim)</strong>

56. The Plaintiff restates each of the above allegations as if set forth at length herein.

57. Equifax violated 15 U.S.C. § 1681g(a), by way of example only, as to Plaintiff and each member of the Equifax Class by failing to disclose a complete consumer file disclosure that included all the information and the source(s) maintained by the Defendant for and/or as NCTUE.

58. As a result of Equifax's conduct, actions and inaction, Plaintiff suffered actual injury, including the stress, frustration, and emotional distress described above. Such injuries resulted in actual harm to Plaintiff. Further, Plaintiff and each member of the Equifax Class suffered actual harm from the denial and deprivation of the information Equifax was required to provide.

59. Plaintiff and each member of the Equifax Class are entitled to recover statutory damages, punitive damages, costs and his attorney fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o

60. Defendant Equifax's violations of 15 U.S.C. § 1681g(a) were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT II: 15 U.S.C. § 1681g(a)
### NCTUE (Class Claim)

61. The Plaintiff restates each of the above allegations as if set forth at length herein.

62. NCTUE violated 15 U.S.C. § 1681g, as to Plaintiff and each member of the NCTUE Class by way of example only, by failing to respond to written request of Plaintiff and other NCTUE class members for a copy of his or her file, by failing to disclose the source(s) of the information in its reports, and by failing to identify each person that procured Plaintiff's reports.

63. As a result of NCTUE's conduct, actions and inaction, Plaintiff suffered actual injury, including the stress, frustration, and emotional distress described above. Such injuries resulted in actual harm to Plaintiff. Further, Plaintiff and each member of the NCTUE Class suffered actual harm from the denial and deprivation of the information NCTUE was required to provide.

64. Plaintiff and each member of the NCTUE Class are entitled to recover statutory damages, punitive damages, costs and his attorney fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o

65. Defendant NCTUE's violations of 15 U.S.C. § 1681g(a) were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff moves for class certification and for judgment against Defendants, as alleged for statutory damages and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs, and other specific or general relief as the Court finds just and appropriate.

**TRIAL BY JURY IS HEREBY DEMANDED.**

    Respectfully submitted,
**ROBERT TREPETA**

    _____/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Matthew J. Erausquin, VSB #65434
Tara B. Keller, VSB #91986
**CONSUMER LITIGATION ASSOCIATES, P.C.**
1800 Diagonal Road, Ste. 600
Alexandria, Virginia 22314
(703) 273-7770 - Telephone
(888) 892-3512 – Facsimile
Email: matt@clalegal.com
Email: tara@clalegal.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2019, I caused a true and correct copy of the foregoing to be filed using the Clerk of Court's CM/ECF system, which then sent a notice of electronic filing to all Counsel of Record.

                                                  /s/
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com